IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL B. HAYS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 04-3351-KHV** |
| **COMMANDANT, United States Disciplinary** ) | |
| **Barracks, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Michael B. Hays filed suit against the Commandant and the Publications Review Official of the United States Disciplinary Barracks ("USDB"), alleging violation of his constitutional rights under the First Amendment. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #14) filed April 1, 2005. For reasons stated below, the Court sustains the motion.

### Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.

Michael B. Hays is confined at the USDB, a long-term maximum security prison in Fort Leavenworth, Kansas. Mailroom personnel screen all printed material which is mailed to inmates at the USDB to determine whether it violates USDB Regulation 28-1. USDB Regulation 28-1 states as follows:

> Mail may be rejected on the basis of content which includes, but is not limited to, material which meets the following criteria: Contains sexually explicit material to include but not limited to, homosexual acts, sodomy, or bondage, which by its nature or content poses a threat to the security, good order or discipline of the institution or undermines treatment programs.

Mailroom personnel set aside any questionable material for review by the Publication Review Officer ("PRO"). If the PRO determines that mail violates the regulation, she notifies the inmate in writing and states the reason for the rejection. The inmate may then either mail the material from the USDB at his expense, destroy the material, appeal the PRO's decision by sending the material to the Publication Advisory Board for a final decision by the Commandant, or request an exception to the policy through the Publication Advisory Board.

On September 29, 2004, mailroom personnel told plaintiff that 14 issues of *Celebrity Sleuth* magazine violated Regulation 28-1. Plaintiff received and signed written notice of the violation. The notice stated that the PRO had rejected the issues because they contained sexually explicit material including "homosexual acts, sodomy, or bondage, which by its nature or content poses a threat to the security, good order or discipline of the institution or undermines treatment programs. Additionally, it promotes conduct that is in violation of the Uniform Code of Military Justice."[1] Plaintiff requested that the magazines be sent to the Publication Advisory Board for review pursuant to USDB Regulation 28-1. Plaintiff wrote on the notice that "[h]alf these issues are not lesbian activity and this magazine only deals with celebrities over 18, so young looking is over 18. Half of these rejection[s] are Harassment!!!" On October 5, 2004, the Commandant denied the appeal and directed plaintiff to either mail out or destroy the rejected issues of the magazine. On October 7, 2004, plaintiff mailed the rejected issues to the U.S. District Court. All parties agree that plaintiff has exhausted administrative remedies.

---

[1] The notice did not specifically state the nature of the offending material, but both parties acknowledge that the magazines contained either photos or writings relating to homosexual acts between women.

Defendants argue that they are entitled to summary judgment because (1) USDB Regulation 28-1 does not violate plaintiff's First Amendment right to receive mail; (2) the application of USDB Regulation 28-1 is not contrary to the original congressional act establishing the USDB; (3) plaintiff is not entitled to relief under Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551 and 702; and (4) plaintiff's request for an injunction is overbroad. Defendants also argue that to the extent this action seeks injunctive relief in their official capacities, the United States should be substituted as the sole defendant.

## **Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The

nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and

may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## Analysis

### I. Proper Parties

Plaintiff has stated that defendants were acting in their official capacities when they denied him access to 14 issues of *Celebrity Sleuth*. An action against named individuals is in fact an action against the United States when the acts complained of were taken by defendants in their official capacities as agents of the United States. Weaver v. United States, 98 F.3d 518, 520 (10th Cir. 1996) (quoting Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989)). Plaintiff seeks injunctive relief from defendants in their official capacities. Accordingly, the Court substitutes the United States as the sole defendant.[2]

---

[2] From this point on, the Court will refer to the defending parties as "defendant."

## II.     Administrative Procedures Act

Plaintiff's complaint seeks judicial review of the Commandant's decision under the Administrative Procedures Act, 5 U.S.C. §§ 551 and 702. Defendant argues that plaintiff is not entitled to relief under the APA because he has not cited any statute which provides judicial review of the Commandant's decision. See Memorandum In Support Of Defendants' Motion For Summary Judgment (Doc. #15) filed April 1, 2005.

Judicial review of agency action is available when a plaintiff claims violation of constitutional rights. See Estep v. United States, 327 U.S. 114, 119 (1946) (judicial review may be required by the Constitution). No statutory authorization is needed. See Riley v. I.N.S., 310 F.3d 1253 (10th Cir. 2002) (strong presumption in favor of judicial review). Furthermore, where Congress intends to preclude judicial review of constitutional claims, it must make its intent clear. Webster v. Doe, 486 U.S. 592, 603 (1988) (citing Johnson v. Robison, 415 U.S. 361, 373-74 (1974)). Here, plaintiff claims that the PRO and the Commandant violated his First Amendment rights when they rejected 14 issues of *Celebrity Sleuth*. Defendant offers no support that Congress intended to preclude judicial review in this type of case, and numerous courts have entertained claims such as those presented by plaintiff. See, e.g., Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).

## III.    First Amendment Right

With regard to plaintiff's First Amendment claim, defendant first argues that USDB Regulation 28-1 does not violate plaintiff's constitutional right to receive information.

In Turner v. Safley, 482 U.S. 78, 89 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

-5-

legitimate penological interests." The Supreme Court set forth four factors to consider when analyzing the reasonableness of a prison regulation: (1) whether the regulation has a valid, rational connection to legitimate governmental interests invoked to justify it; (2) whether alternative means of exercising First Amendment rights remain open to the inmate; (3) the impact that accommodation of the inmate's asserted right would have on other inmates, prison personnel and allocation of prison resources generally; and (4) whether any alternative would fully accommodate the inmate's rights at *de minimis* cost to valid penological interests. See id. at 89-90.

In Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court affirmed the reasonableness standard as the appropriate standard of review for a prison regulation which limited distribution of incoming publications. Relying on the dissent in Thornburgh, plaintiff urges the Court to reject the reasonableness standard. Plaintiff argues that the record reveals a genuine issue of material fact whether the rejected issues of *Celebrity Sleuth* are obscene and are "too sexually explicit to a contemporary community standard." Plaintiff also questions whether – under Brockett v. Spokane Arcades, Inc., 472 U.S. 491 (1985), and Miller v. California, 413 U.S. 15 (1973) – the prison can reject the entire issue of a publication on the basis of one picture or article. Plaintiff's framing of the issues, however, does not address the proper standard of review.

In Procunier v. Martinez, 416 U.S. 396, 413-14 (1974), overruled by Thornburgh, 490 U.S. 401, the Supreme Court held that prisons may censor mail if the regulation in question (1) furthers an important or substantial governmental interest unrelated to the suppression of expression and (2) does not limit First Amendment freedoms to a greater degree than necessary to protect the particular governmental interest involved. The Supreme Court noted, however, that its holding addressed the restriction on the rights of

those who were not prisoners and reserved ruling on censorship questions involving prisoner rights. Id. at 409. In Pell v. Procunier, 417 U.S. 817, 827 (1974), a case which addressed First Amendment rights of prison inmates, the Supreme Court stated that "institutional objectives furthered by th[e] regulation and the measure of judicial deference owed to corrections officials in their attempt to serve those interests are relevant in gauging the validity of the regulation." In Thornburgh, the Supreme Court acknowledged that mail censorship "would raise grave First Amendment concerns outside the prison context." 490 U.S. at 407. The Supreme Court nonetheless recognized that First Amendment rights of prisoners must be addressed "with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Id. The Court further opined,

> [P]rison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison. Acknowledging the expertise of these officials and that the judiciary is "ill equipped" to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.

Id. at 407-08. Ultimately, in Thornburgh, the Supreme Court clarified that the Turner standard of review, rather than the Martinez standard, applies to prison regulations which limit incoming publications. Accordingly, this Court declines to apply a standard of review other than the reasonableness standard set forth in Turner and now analyzes each factor.

### A. Valid Rational Connection

Defendant argues that Regulation 28-1 is aimed at eliminating potential threats to the security and good order of the institution by (1) minimizing inmate exposure to homosexual activity and thus reducing the spread of HIV, hepatitis and other sexually transmitted diseases; (2) reducing inmate exposure to

material which may perpetuate perception of women as sex objects, thus adversely affecting successful treatment and rehabilitation of male inmates convicted of sex offenses; and (3) reducing the likelihood of sexual attacks on female correctional officers. Plaintiff argues that to reject the publications because they contain pictures of women engaged in homosexual acts is not rationally related to the security, good order, discipline or correctional mission of an all-male facility. According to the Commandant, publications which depict female homosexual conduct (1) adversely impact the working environment and safety of female correctional officers, and (2) have a "significant adverse effect on the successful treatment and rehabilitation of those male inmates convicted of sex offenses." Exhibit A to Defendants' Reply To Plaintiff's Response To Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. #33) ¶¶ 5-6. Defendant also notes that homosexual acts violate the Uniform Code of Military Justice. Id. ¶ 4.

On this record, the Court must conclude as a matter of law that USDB Regulation 28-1 is rationally related to legitimate penological interests. See Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (jail officials required only to show that they might reasonably have thought policy of rejecting publications with frontal nudity would advance its interests, not that policy in fact advanced its interests); Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999) (statute which prohibits distribution of sexually explicit material has valid rational connection to legitimate penological interest of rehabilitation of sex offenders); Dawson v. Scurr, 986 F.2d 257 (concern that sexually explicit materials could cause inmates to act out sexual aggression is legitimate penological interest).

### B. Alternative Means Of Exercising Right

Defendant argues that because the regulation permits plaintiff to receive and read a variety of publications, including other issues of *Celebrity Sleuth*, the second Turner factor weighs in its favor.

Plaintiff offers no argument regarding this factor and defendant's argument is persuasive. Here, inmates may receive any publication that does not run afoul of USDB Regulation 28-1, which ultimately permits inmates access to a wide variety of publications.

### C. Impact Of Accommodation On Others

Defendant argues that the USDB mail policy has significant impact on other inmates and guards. Specifically, defendant contends that permitting plaintiff to possess materials which contain homosexual content could cause loss of good order and discipline within the facility as well as undermine treatment programs for sex offenders.

In Thornburgh, the Supreme Court found as follows:

> [T]he class of publications to be excluded is limited to those found potentially detrimental to order and security . . . . Where, as here, the right in question "can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike," the courts should defer to the "informed discretion of corrections officials."

490 U.S. at 418 (citations omitted). On this record, the Court finds no reason to deviate from the Supreme Court's conclusion in Thornburgh, and concludes as a matter of law that accommodation of plaintiff's right to receive the materials in question would negatively affect other inmates, prison personnel and allocation of prison resources.

### D. Absence Of Ready Alternatives

The Supreme Court stated that "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Turner, 482 U.S. at 90-91. Defendant argues that as a matter of law, no alternative could fully accommodate plaintiff's rights

at *de minimis* cost. Relying on the dissent in Thornburgh, plaintiff argues that delivery of part of a publication would not endanger prison security. Defendant offers two potential alternatives, both of which it believes are unreasonable: (1) redacting prohibited information; and (2) permitting inmates to review materials in the presence of corrections personnel. Defendant rejects the first alternative because the USDB receives over 270,000 pieces of mail each year and redacting the publications would be costly and unreasonably burdensome. Additionally, delivery of redacted materials would violate USDB policy by permitting inmates to possess modified publications (a policy which is designed to prevent extortion among inmates). Defendant rejects the second alternative because reviewing the materials in the presence of a corrections officer would require more than *de minimis* costs for security and circumvent the purpose of the regulation. Plaintiff has not raised a genuine issue of material fact whether delivering part of the magazines would accommodate his rights at *de minimis* cost to valid penological interests.

In sum, the Court finds that all Turner factors weigh in favor of defendant. The Court concludes that as a matter of law, USDB Regulation 28-1 does not violate plaintiff's constitutional rights.

**IV.    *Celebrity Sleuth***

The Court next considers whether the denial of 14 issues of *Celebrity Sleuth* is in violation of plaintiff's constitutional rights. Defendant rejected the issues because they contained photographs of homosexual activity. The Court has determined that Regulation 28-1 is facially valid, and that the rejected issues do in fact contain material which violates the regulation. As a result, defendant did not deny plaintiff's constitutional rights when it denied him the 14 issues of *Celebrity Sleuth.*

**V.    Original Congressional Act Which Established USDB**

Plaintiff's complaint argues that Regulation 28-1 is inconsistent with the Congressional Act which

established the prison. Specifically, plaintiff contends that the 1873 Act provides that "[t]he use of newspapers and books shall not be denied convicts at times when not employed . . . ." Complaint (Doc. #1) filed October 8, 2004, ¶ 19. Defendant asserts that the statute does not mandate that all reading materials be permitted inside the facility and that the statute also authorizes the Department of Defense to "frame regulations for the government of the prisoners." Act of March 3, 1873, ch. 249, 17 Stat. 582-584. As noted above, the challenged regulation permits inmates access to a wide variety of publications. Plaintiff does not dispute this fact. Accordingly, plaintiff has not raised a genuine issue of material fact whether Regulation 28-1 violated the 1873 Act, and the Court finds as a matter of law that it does not.

### VI.    Overbreadth Of Injunction Request

Finally, defendant argues that plaintiff's request for injunction is overbroad. Because the Court finds that defendant is entitled to summary judgment under the Turner analysis, it need not reach this argument.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #14) filed April 1, 2005, be and hereby is **SUSTAINED**.

Dated this 22nd day of August, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge